**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSE GUZMAN,

    *Plaintiff*,

v.

CITY OF NEWARK, NEWARK POLICE
DEPARTMENT, DETECTIVE FELIBERTO
PADILLA, POLICE OFFICER CRUZ, POLICE
OFFICER P. COLON, POLICE OFFICER
ADAM MORALES, POLICE OFICER
TRACIE ASHFORD, DETECTIVE DOUGLAS
MARSHALL, SERGEANT FERRER,
DETECTIVE RICHARD PISANO,
DETECTIVE MICHAEL KRUSZNIS, POLICE
OFFICER JEFREY DESOUZA, POLICE
OFFICER V. SANCHEZ, INVESTIGATING
OFFICER TYRONNE HANCOCK, AS-YET-
IDENTIFIED POLICE OFFICERS 1-20, ABC
CORP. 1-20 and JOHN DOE 1-20, (said names
being fictitious designations),

    *Defendants*.

Civil Action No. 20-6276

**OPINION**

**John Michael Vazquez, U.S.D.J.**

       This action arises out of Plaintiff's arrest and prosecution relating to two separate incidents

that took place in 2014 and 2016.  Presently before the Court is a motion to dismiss the Second

Amended Complaint ("SAC") by the City of Newark, Newark Police Department, Carlos Cruz,

Feliberto Padilla, Douglass Marshall, Michael Krusznis, Adam Morales, and Valerie Sanchez

Bermudez (collectively "Defendants").  D.E. 34.  Plaintiff opposed the motion, D.E. 37, to which

Defendants submitted a letter in reply, D.E. 38.  The Court reviewed the parties' submissions[1] made in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons stated below, Defendants' motion is **GRANTED**.

## I.    BACKGROUND[2]

On February 9, 2014, Plaintiff stopped for food at Tony's Marisqueria, a restaurant in Newark, New Jersey.  SAC ¶¶ 13-14.  Upon leaving the restaurant, Plaintiff witnessed "a commotion" during which shots were fired.  *Id.* ¶ 15.  Plaintiff was shot in the legs and lost consciousness.  *Id.* ¶¶ 15-16.  While recovering in the hospital, Plaintiff was visited by Newark Police Officers Padilla, Colon, Morales, Ashford, Marshall, and Ferrer and was asked whether he could identify who had shot him, which he was unable to do.  *Id.* ¶ 18.  On February 26, 2014, the day he was discharged from the hospital, Plaintiff was again visited by the officers, who advised him that he was being arrested for his involvement in the shooting.  *Id.* ¶ 19.  Plaintiff was then held at a police station in Newark for approximately one week before being transferred to the Essex County Jail.  *Id.* ¶ 20.

On March 10, 2015, Plaintiff was indicted by a Grand Jury on charges related to the February 9, 2014 shooting.  *Id.* ¶¶ 21-22.  Plaintiff alleges on information and belief that the indictment was based upon the false testimony of Detective Padilla, who testified that a surveillance video of the shooting clearly depicted Plaintiff as one of the shooters.  *Id.* ¶ 23.  The

---

[1] Defendants' brief in support of their motion to dismiss (D.E. 34-1) will be referred to as "Br.";
Plaintiff's opposition brief (D.E. 37) will be referred to as "Opp."; and Defendants' letter in reply
(D.E. 38) will be referred to as "Reply."

[2] The factual background is taken from the SAC, D.E. 26.  When reviewing a motion to dismiss,
the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578
F.3d 203, 210 (3d Cir. 2009).

SAC states that the surveillance "was of poor quality and did not depict [P]laintiff as a shooter." *Id.* Plaintiff was prosecuted for approximately two years before the indictment was dismissed on June 8, 2016. *Id.* ¶ 25.

On June 18, 2016, ten days after the indictment was dismissed, an incident occurred on Taylor Street in Newark involving a physical altercation and shots fired into the air. *Id.* ¶¶ 26-27. The incident was investigated by Newark Police Officers Pisano, Krusznis, DeSouza, Sanchez, and Hancock. *Id.* ¶ 28. The investigation included interviews of various witnesses. *Id.* ¶ 29. Plaintiff was not mentioned in the initial interviews; nor did the witnesses describe any individual resembling Plaintiff in the initial interviews. *Id.* However, according to Defendants, during his second interview, witness Miguel Robles identified Plaintiff as an individual involved in the incident. *Id.* ¶ 30. Plaintiff alleges that he was not involved in the June 18, 2016 incident and was nowhere near the location on that date. *Id.* ¶ 27. Plaintiff claims upon information and belief that Defendants, "acting in concert, introduced [his] name and photographic likeness into [the] investigation," "fabricated his involvement," and "forced, threatened and/or coerced witness Miguel Robles to identify [P]laintiff by telling Robles that he would be arrested and sent to prison on fabricated charges if he did not do so." *Id.* ¶ 31. According to Plaintiff, Defendants fabricated his involvement "as revenge and retribution" for the recently dismissed charges relating to the February 9, 2014 incident and for Plaintiff's prior contact with the Newark Police Department. *Id.* Based on the officers' investigation, a warrant for Plaintiff's arrest was issued, and Plaintiff was arrested and charged in connection with the June 18, 2016 incident. *Id.* ¶ 32.

On September 1, 2016, a Grand Jury indicted Plaintiff on those charges. *Id.* ¶¶ 33-34. Plaintiff alleges upon information and belief that the indictment was based on Pisano's false testimony, which included reference to Robles' forced, threatened and/or coerced identification of

Plaintiff.  *Id.* ¶¶ 34-35.  On that same day, charges related to the February 9, 2014 shooting were presented for a second time to a Grand Jury.  *Id.* ¶ 37.  Plaintiff was again indicted based upon Padilla's allegedly false testimony.  *Id.* ¶ 38.  All charges against Plaintiff under both indictments were ultimately dismissed on May 25, 2018 on the prosecutor's own motion.  *Id.* ¶ 40.

On May 22, 2020, Plaintiff filed his initial Complaint, asserting claims arising out of his arrest and prosecution for the February 9, 2014 and June 18, 2016 incidents.  D.E. 1.  Plaintiff subsequently filed an Amended Complaint, D.E. 10, and the SAC, D.E. 26.  The SAC contains claims pursuant to 42 U.S.C. § 1983 ("Section 1983") based upon alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments as well as claims under New Jersey state law.  SAC ¶¶ 44-50, 64.  Plaintiff also brings claims for conspiracy, *id.* ¶¶ 51-54, and municipal liability, *id.* ¶¶ 55-65.  The current motion to dismiss the SAC followed.  D.E. 34.

## II.   STANDARD OF REVIEW

Defendants move to dismiss the SAC for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  A court "must accept all of the complaint's well-pleaded facts as true."  *Id.* at 210.  However, "'[t]hreadbare

4

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice'" to state a plausible claim. *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013)

(quoting *Iqbal*, 556 U.S. at 678).

### III.   ANALYSIS

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which, in relevant part, provides as

follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for

vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To prove a Section 1983 claim, a plaintiff must demonstrate that (1) a person deprived him of a

right secured by the Constitution or federal law; and (2) the person who deprived him of that right

acted under color of state law. *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *2 (D.N.J.

July 29, 2016).  Because there is no dispute that Defendants acted under color of state law for

purposes of Section 1983, the focus is on whether Defendants violated Plaintiff's constitutional

rights.

Plaintiff also asserts claims under "the Constitution and laws of the State of New Jersey"

without specifying the underlying laws that were allegedly violated.  SAC ¶ 64.  The Court

construes Plaintiff's state law claims as arising under the New Jersey Civil Rights Act ("NJCRA"),

N.J.S.A. § 10:6-2, *et seq.*  The NJCRA affords a private right of action to

> [a]ny person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the

> Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. § 10:6-2. The "NJCRA was modeled after § 1983, [so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez*, 2016 WL 4107689, at *5 (internal quotations and citation omitted). Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

As an initial matter, Plaintiff concedes that his Fifth Amendment claim and claim for punitive damages must be dismissed and withdraws those claims. Opp. at 23. Therefore, the Court dismisses those claims.

### A. Statute of Limitations

Defendants first argue that Plaintiff's Section 1983 claims are time-barred. Br. at 15-16. The statute of limitations is an affirmative defense not normally decided on a motion to dismiss. *See Crump v. Passaic County*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015). However, "where the complaint facially shows noncompliance with the limitations period," dismissal on statute of limitations grounds may be appropriate. *Id.* "Section 1983 has no statute of limitations of its own, but borrows the statute of limitations from state personal injury torts." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). In New Jersey, personal injury torts have a two-year statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Federal law, however, governs the date when a Section 1983 claim accrues such that the statute of limitations begins to run. *Nguyen*, 906 F.3d at 273. Under federal law, "a claim accrues when the last act needed to complete the tort occurs." *Id.*

6

Defendants contend that all of Plaintiff's Section 1983 claims are time-barred, asserting without supporting analysis that the claims arising out of the February 9, 2014 incident accrued on that same date and the claims arising out of the June 18, 2016 incident accrued on that same date. Br. at 15-16. To the extent Plaintiff brings false arrest claims, his cause of action accrued "on the date of the arrest…because that is when [he] ha[d] reason to know of his injury." *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011). To the extent Plaintiff's claims sound in false imprisonment, his cause of action accrued when he became detained pursuant to legal process. *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007)). Thus, Plaintiff's false arrest and imprisonment claims relating to the February 9, 2014 shooting accrued no later than March 2015, when Plaintiff was indicted and charged for the first time in relation to the shooting. Likewise, his false arrest and imprisonment claims relating to the June 18, 2016 incident accrued no later than September 2016, when he was charged in relation to that incident. Accordingly, the two-year statute of limitations period for the false arrest and imprisonment claims expired well before Plaintiff filed his Complaint on May 22, 2020. The Court therefore finds that Plaintiff's false arrest and imprisonment claims are time-barred.

Plaintiff argues, however, that Defendants attempt to frame his claims as false arrest and imprisonment claims, whereas his claims sounding in malicious prosecution are not time-barred. Opp. at 12. He further asserts that "it is undisputed" that his malicious prosecution claims did not accrue until all false charges related to both incidents were dismissed. *Id.* Defendants respond that "a thorough reading of Plaintiff's complaint indicates that Plaintiff does not sufficiently plead [his malicious prosecution] allegation," but they do not dispute whether the malicious prosecution claims were timely brought. Reply at 2. Defendants thus appear to concede that the malicious prosecution claims accrued when the charges were dismissed.

7

A malicious prosecution claim accrues "when the termination of criminal proceedings becomes favorable; that is, when the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (internal quotation omitted). Here, all charges brought against Plaintiff under the second indictment for the February 9, 2014 incident and the indictment for the June 18, 2016 incident were dismissed on May 25, 2018. SAC ¶ 40. Because the parties do not dispute whether dismissal of the charges constitutes a favorable termination of criminal proceedings, the Court accepts Plaintiff's position that his malicious prosecution claims accrued on the date the charges against him were dismissed. Thus, Plaintiff timely brought his malicious prosecution claims within the two-year statute of limitations which expired on May 25, 2020, three days after Plaintiff filed his initial Complaint.

### B.  Individual Defendants' Involvement

Defendants next contend that Plaintiff fails to specifically plead the individual Defendants' personal involvement in the violation of his civil rights. Br. at 16-18. In order for Section 1983 liability to attach to "[an individual] defendant in a civil rights action[, that defendant] must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Moreover, mere "conclusory allegations against defendants as a group" that "fail[] to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. County of*

*Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id*.

The SAC alleges that Defendants Padilla, Colon, Morales, Ashford, Marshall and Ferrer arrested Plaintiff in connection with the February 9, 2014 shooting and that this arrest and subsequent detention were unconstitutional.  SAC ¶ 19.  Additionally, as to the June 18, 2016 incident, Plaintiff claims that Defendants Pisano, Krusznis, DeSouza, Sanchez and Hancock engaged in an improper investigation that led to his unconstitutional arrest. *Id.* ¶¶ 28, 32.  These allegations fail to specify the personal involvement of any given Defendant and constitute "impermissibly vague group pleading" that cannot withstand a motion to dismiss. *Falat*, 2013 WL 1163751, at *3; *see also Diaz v. City of Passaic*, Civ. No. 16-9282, 2019 WL 337583, at *4 (D.N.J. Jan. 28, 2019) (dismissing claims for failure to plead specific facts as to each defendant's involvement in the alleged wrongdoing).

However, Plaintiff also alleges that Padilla provided false grand jury testimony regarding the February 9, 2014 shooting, SAC ¶¶ 23, 38, and that Pisano provided false grand jury testimony leading to Plaintiff's indictment for the June 18, 2016 incident, *id.* ¶ 34.[3]  These claims specify Padilla and Pisano's personal involvement in the alleged wrongdoing and thus will not be dismissed on the basis of impermissible group pleading. *See Cresci v. Kazan*, Civ. No. 19-19928, 2020 WL 5700754, at *3 (D.N.J. Sept. 24, 2020) (holding that the plaintiff's complaint alleging

---

[3] Defendants have not asserted that Padilla and Pisano are entitled to immunity from liability arising from their grand jury testimony, and the Court declines to do so *sua sponte*.  However, it appears settled that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Peteete v. Asbury Park Police Dep't*, 477 F. App'x 887, 889 (3d Cir. 2012) (quoting *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012)).  Law enforcement witnesses are entitled to this absolute immunity to the same extent lay witnesses are. *Rehberg*, 566 U.S. at 367. If in his amended pleading, Plaintiff again relies on grand jury testimony, the Court will require briefing on this issue.

two officers unconstitutionally arrested and detained the plaintiff was a sufficient showing of the officers' personal involvement).

### C. Malicious Prosecution

Defendants argue that Plaintiff fails to state a claim for false arrest or any other constitutional violation because there was probable cause for his arrest.  Br. at 18.  Because Plaintiff's false arrest claims are time-barred, the Court will analyze the parties' probable cause arguments only in relation to Plaintiff's malicious prosecution claim.  For a Section 1983 malicious prosecution claim, a plaintiff must establish that (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered from a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  *Allen v. N.J. State Police*, 974 F.3d 497, 502 (3d Cir. 2020) (quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)).  If law enforcement officers "influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014); *see also Henderson v. Union County*, Civ. No. 14-7708, 2017 WL 4861622, at \*4 n.3 (D.N.J. 2017) ("Although prosecutors typically initiate proceedings against criminal defendants, liability for malicious prosecution can also attach when a defendant influences a third party to initiate the proceedings.") (internal quotation omitted).  In order to prevail on a malicious prosecution claim arising from his arrest, Plaintiff must show that Defendants lacked probable cause to arrest him. *See Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005).  Probable cause exists if, at the time a suspect is arrested, "the facts and circumstances within the officers' knowledge and of

which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* at 602.

Here, Defendants claim that probable cause existed for Plaintiff's arrest for the February 9, 2014 incident because surveillance camera footage showed Plaintiff shooting at the individuals who ultimately shot him. Br. at 19. As to the June 18, 2016 incident, Defendants point to witness accounts that Plaintiff was involved and fired a gun into the air as well as an identification of Plaintiff during a photo array. *Id.* Defendants also note that an arrest warrant was issued for gun charges associated with this incident after a judge found probable cause. *Id.* at 19-20. Plaintiff counters that Defendants' claims were "concocted solely to contradict the allegations in [the SAC]" and must be ignored on a motion to dismiss. Opp. at 15. Plaintiff's position is undercut by his pleading, which sets forth facts consistent with the contentions in Defendants' briefing. According to the SAC, Padilla testified that a surveillance video of the February 9, 2014 shooting depicted Plaintiff as one of the shooters. SAC ¶ 23. The SAC also states that, according to Defendants' investigatory documents, a witness identified Plaintiff as a participant in the June 18, 2016 incident, and that a warrant for Plaintiff's arrest was issued in connection with that incident. *Id.* ¶¶ 30, 32.

Plaintiff has not plausibly pled that Defendants lacked probable cause to arrest him. He alleges that he was arrested in connection with the February 9, 2014 shooting despite the officers "not having any credible evidence indicating that [he] had committed a crime." *Id.* ¶ 19. Plaintiff does not dispute that he was present at the scene of the shooting, *see id.* ¶¶ 13-15, but he posits that a surveillance video capturing the incident was of poor quality and did not depict him as a shooter, *id.* ¶ 23. Even accepting his contention that the surveillance video did not show him as a shooter, Plaintiff has not shown that Defendants lacked probable cause to arrest him. The officers

11

may have obtained evidence aside from the surveillance video, which paired with Plaintiff's presence at the scene of the shooting, may have created a "fair probability" that Plaintiff was the shooter. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue.") (internal citation omitted). Indeed, the fact that officers interviewed Plaintiff about the identity of the shooter when Plaintiff was still considered a victim, *see* SAC ¶ 18, indicates that they investigated the incident prior to their determination that probable cause existed to arrest Plaintiff. In any event, Plaintiff simply has not met his burden of plausibly pleading that Defendants *lacked* probable cause such that his malicious prosecution claim may survive a motion to dismiss.

As to Plaintiff's arrest for the June 18, 2016 incident, an arrest pursuant to a warrant generally establishes that the proceeding was initiated with probable cause. *See Waters v. Cheltenham Twp.*, 700 F. App'x 149, 152 (3d Cir. 2017). However, "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson*, 212 F.3d at 786. Here, Plaintiff claims that the warrant for his arrest was issued "[b]ased upon [D]efendants' false and improper investigation." SAC ¶ 32. To prevail on his claim that the officers' sworn affidavit of probable cause reflected a false version of events, Plaintiff must show "first, that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, that those assertions or omissions were 'material, or necessary, to the finding of probable cause.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (quoting *Wilson*, 212 F.3d at 786-87).

Plaintiff falls short of meeting his burden here. As an initial matter, Plaintiff's conclusory claim that Defendants conducted a "false and improper investigation" is unsupported by any plausible facts in the SAC. More importantly, Plaintiff has not identified the false statements or

omissions contained within the affidavit underlying his arrest warrant, much less shown that the officers who created the affidavit made false statements or omissions with at least a reckless disregard for the truth.  Because Plaintiff has not identified those assertions or omissions, he necessarily cannot meet the additional requirement of showing that the allegedly false statements or omissions were material to the finding of probable cause.  Without specific information about the contents of the affidavit underlying Plaintiff's arrest warrant, including which statements or omissions within the affidavit are allegedly false, the Court cannot determine whether there was probable cause to support the arrest warrant.  *See Dempsey*, 834 F.3d at 470 (ruling that in analyzing whether there was probable cause for the issuance of an arrest warrant based upon an officer's sworn affidavit, a district court must identify the improperly asserted or omitted facts and, if it determines that there were reckless misrepresentations or omissions, excise those portions of the affidavit and assess whether the remaining contents of the affidavit would establish probable cause).  Therefore, the Court finds that Plaintiff has not plausibly pled that Defendants lacked probable cause to arrest him in connection with the June 18, 2016 incident.

In sum, Plaintiff has not shown that Defendants lacked probable cause to arrest him in connection with the two incidents; thus, his malicious prosecution claims fail.  *See Wright*, 409 F.3d at 604 (dismissing the plaintiff's malicious prosecution claim because there was probable cause for the arrest and prosecution underlying her malicious prosecution claim).[4]  Because Plaintiff's malicious prosecution claims are dismissed, the Court need not reach Defendants' arguments that they are entitled to qualified immunity for their conduct in connection with Plaintiff's arrest.

---

[4] The parties did not analyze whether the other elements of a malicious prosecution claim are sufficiently stated.

### D.  Fabrication of Evidence

Defendants further argue that Plaintiff's conclusory assertions are insufficient to meet the

pleading standard for fabrication of evidence claims.  Br. at 31.  To plead a claim for fabrication

of evidence, a plaintiff must demonstrate that there was "a reasonable likelihood that, absent that

fabricated evidence, the defendant would not have been criminally charged."  *Black v.*

*Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016), *as amended* (Sept. 16, 2016).  To meet the

"reasonable likelihood" standard, a plaintiff must "draw a meaningful connection between her

particular due process injury and the use of fabricated evidence against her."  *Id.* at 372 (internal

quotation omitted).  Moreover, "testimony that is incorrect or simply disputed should not be treated

as fabricated merely because it turns out to have been wrong."  *Id.* (quoting *Halsey*, 750 F.3d at

295).  Rather, there must be "'persuasive evidence supporting a conclusion that the proponents of

the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith."  *Id.*

(quoting *Halsey*, 750 F.3d at 295).  A pleading must contain allegations describing such persuasive

evidence in order to survive a motion to dismiss.  *See Boseman v. Upper Providence Twnshp.*, 680

F. App'x 65, 70 (3d Cir. 2017).

Plaintiff alleges on information and belief that Padilla falsely testified before a Grand Jury

that a surveillance video of the February 9, 2014 shooting clearly depicted Plaintiff as one of the

shooters, when in fact the video was of poor quality and did not depict Plaintiff as a shooter.  SAC

¶ 23.  He also alleges on information and belief that Pisano provided false grand jury testimony

regarding Plaintiff's involvement in the June 18, 2016 incident—which included reference to

Robles' allegedly forced, threatened, and/or coerced identification of Plaintiff—leading to

Plaintiff's indictment.  *Id.* 34-35.  Plaintiff's claims are conclusory.  When a plaintiff makes

allegations based on information and belief, he must explain the basis for the information and

14

belief.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 252-53 (3d Cir. 2012) (finding that the pleading failed to allege sufficient facts regarding an alleged participant in a wrongful scheme because the pleading did not explain the basis for the allegations based on information and belief about the participant).  Here, Plaintiff provides no basis for his claims that Padilla and Pisano provided false grand jury testimony, and "[w]ithout providing a factual basis for his purported knowledge of the grand jury proceedings, [Plaintiff's] allegations that the individual defendants made false statements to the grand jury are speculative and threadbare."  *Karkalas v. Marks*, 845 F. App'x 114, 119 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 142 S. Ct. 464, 211 L. Ed. 2d 282 (2021).  In addition, it appears that Plaintiff should have had access to the relevant information because Plaintiff could have obtained the grand jury materials relating to his indictments pursuant to the New Jersey discovery rules.  *See Matter of Grand Jury Testimony*, 124 N.J. 443, 450 (1991) ("[I]n New Jersey every defendant has full and complete access to grand-jury materials.") (citing R. 3:13-3(a)(3)).  Nor does Plaintiff explain the basis for his allegations "[u]pon information and belief" that Defendants forced, threatened, and/or coerced Robles to identify him in the photo array presented during the investigation of the June 18, 2016 incident.  Further, the SAC does not contain "persuasive evidence supporting a conclusion that [Padilla and Pisano] [we]re aware that evidence [was] incorrect or that the evidence [was] offered in bad faith."  *Black*, 835 F.3d at 372.  In sum, Plaintiff's conclusory allegations that Padilla and Pisano provided false grand jury testimony are insufficient to meet the high bar to plead a fabrication of evidence claim.  Therefore, Plaintiff's fabrication of evidence claims are dismissed.

### E. Conspiracy

Defendants also argue that Plaintiff's conspiracy claim should be dismissed because they did not act in concert or agreement. Br. at 27. To prove a civil conspiracy under Section 1983, a plaintiff must show "that two or more co-conspirators reached an agreement for the purpose of depriving constitutional rights under color of state law." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 646 (D.N.J. 2011). The "linchpin for [Section 1983] conspiracy is agreement[;] concerted action, without more, cannot suffice to state a conspiracy claim." *Watson v. Sec. Pa. Dept. of Corrections*, 436 F. App'x 131, 137 (3d Cir. 2011) (internal quotations omitted). A plaintiff must also establish an agreement and the existence of an underlying wrong to establish a claim for civil conspiracy under New Jersey law. *Banco Popular N.A. v. Gandi*, 184 N.J. 161, 177-78 (2005).

Here, Plaintiff alleges in a conclusory manner that Defendants "acted in concert to violate [his] civil rights and further conspired to charge [him] with crimes he did not commit," SAC ¶ 42, and that Defendants "engaged in a joint venture, conspired together, and had an agreement, to act in concert" to inflict constitutional injury against Plaintiff, *id.* ¶ 52. Such threadbare allegations, without more, are insufficient to plead that the Defendants reached an agreement to deprive Plaintiff of his constitutional rights. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 244 (3d Cir. 2016) ("A plaintiff must rely on more than his or her own suspicion and speculation to satisfy [the meeting of the minds] requirement."); *Livingston v. Borough of Edgewood*, 430 F. App'x 172, 178 (3d Cir. 2011) (affirming dismissal of conspiracy claims because plaintiff "proffered neither direct nor circumstantial evidence sufficient to a reasonable finding of conspiratorial agreement or concerted efforts among the defendants") (internal brackets omitted). Accordingly, Plaintiff's conspiracy claim is dismissed.

**F.** ***Monell* Claims**

Plaintiff also brings municipal liability claims against the City.   SAC ¶¶ 55-65.   A municipality or local governing body cannot be held liable under a theory of *respondeat superior* for a Section 1983 claim.   *Monell v. Dept. of Social Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). Instead, a municipality may be liable under Section 1983 only "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury."   *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694).[5]   A policy exists "when a decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."   *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (internal quotation and alteration omitted).   A custom may be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."   *Id*. at 155-56 (internal quotation omitted).   Ultimately, to plausibly plead *Monell* liability, "[a] plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered."   *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) (internal citation and quotation marks omitted).

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline.   To plead such a failure-to claim, a plaintiff must demonstrate that a city's failure "reflects a deliberate or conscious choice."   *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)). For claims involving police officers, the alleged failure can only serve as a basis for Section 1983

---

[5] Claims asserting municipal liability pursuant to Section 1983 are commonly referred to as *Monell* claims.

liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (explaining that a *Monell* claim that is "predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality"). Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)). Moreover, "'[d]eliberate indifference' is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action… Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (emphasis added) (internal quotations, citations, and brackets omitted).

Here, Plaintiff alleges that the City's "customs, policies, usages, practices, procedures, and rules" included "initiating and continuing criminal proceedings without evidence of criminal activity and/or continuing criminal proceedings despite the presence of exculpatory evidence." SAC ¶ 59. He continues that these customs and policies constituted deliberate indifference to his constitutional rights and were the proximate cause of constitutional violations he allegedly suffered. *Id.* ¶¶ 60-61. Plaintiff additionally claims that the City, "as municipal policymaker in the training and supervision" of police officers, has pursued a policy and custom of deliberate indifference. *Id.* ¶ 64. Defendants argue that the municipal liability claims should be dismissed

because Plaintiff fails to identify any policy or custom that resulted in the alleged constitutional violations.  Br. at 26.

  Plaintiff has not adequately pled his *Monell* claims.  First, he has not plausibly alleged the existence of a policy or custom that resulted in his alleged constitutional injuries.  The two instances in which the City allegedly wrongfully initiated criminal proceedings against Plaintiff do not give rise to a plausible claim that the City had a policy or custom of initiating and/or continuing criminal proceedings without evidence or in the face of exculpatory evidence.  *See Kilgarriff v. Strunk*, Civ. No. 18-10120, 2019 WL 1434763, at *5 (D.N.J Mar. 31, 2019) (finding that merely because the plaintiff was arrested and allegedly subjected to excessive force does not, by itself, provide a factual basis to claims of a city-wide policy).  Nor does Plaintiff provide any other specific factual allegations supporting the existence of such a policy or custom.  *See Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (dismissing the plaintiff's municipal liability claim because the complaint set forth only a single instance of the wrongful conduct and did not contain specific facts demonstrating the existence of a policy or custom).  Further, Plaintiff's conclusory statements that the City's policies and customs constituted deliberate indifference to Plaintiff's constitutional rights are insufficient to meet the "stringent standard" for pleading deliberate indifference.  *Thomas*, 749 F.3d at 223.  The Court acknowledges, as Plaintiff notes, that he has not yet had the benefit of discovery.  *See* Opp. at 20.  But nonetheless, Plaintiff's municipal liability claim must be supported by more than what is stated in the SAC in order to survive a motion to dismiss.  *See Kilgarriff*, 2019 WL 1434763, at *5 ("Even though in order to survive a motion to dismiss [the p]laintiff is not required to plead the level of proof needed to ultimately prove his municipal liability claims, [he] must do more than he has pleaded here.").

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED.**[6]   The

dismissal is without prejudice and Plaintiff shall have thirty (30) days to file a third amended

complaint that cures the deficiencies noted herein.[7]   If Plaintiff does not file a third amended

complaint within that time, the claims dismissed without prejudice will be dismissed with

prejudice.   An appropriate Order accompanies this Opinion.

Dated: April 7, 2022

John Michael Vazquez, U.S.D.J.

---

[6] Defendants Colon, Ashford, Ferrer, Pisano, DeSouza, and Hancock did not file a motion to dismiss or otherwise answer the SAC.   However, "a court dismissing claims against moving defendants may *sua sponte* dismiss claims against non-moving defendants." *Eun Ju Song v. Bank of Am., N.A.*, Civ. No. 14-3204, 2015 WL 248436, at *3 (D.N.J. Jan. 20, 2015) (dismissing claims against non-moving defendants with prejudice).

[7] The Court notes that it appears from the face of the SAC that Plaintiff's false arrest claims are clearly time-barred.   However, Plaintiff will be granted an opportunity to replead his false arrest claims alongside his other dismissed claims.