<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE GUZMAN,<br><br>                              Plaintiff,<br><br>         v.<br><br>CITY OF NEWARK, *et al.*,<br><br>                              Defendants. | Case No. 20cv6276 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Jose Guzman ("Plaintiff") brings this civil rights action against the City of Newark ("City"), Newark Police Department ("Newark PD"), three Newark PD Detectives Feliberto Padilla ("Detective Padilla"), Richard Pisano ("Detective Pisano"), and Michael Krusznis ("Detective Krusznis"),[1] and three fictitious parties,[2] following two separate incidents in 2014 and 2016 that resulted in Plaintiff's arrest and prosecution. Defendants move to dismiss the Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 47. The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b). For the reasons set forth below, Defendants' motion will be **GRANTED**.

---

[1] The three named Newark PD Detectives will collectively be referred to as "Detective Defendants."

[2] The defending parties will collectively be referred to as "Defendants."

## I.    BACKGROUND[3]

On February 9, 2014, at approximately 3:00 a.m., Plaintiff stopped for food at Tony's Marisqueria in Newark, New Jersey.  D.E. 41 "TAC" ¶ 13.  Upon exiting Tony's Marisqueria, Plaintiff witnessed "a commotion" involving gunfire.  *Id.* ¶ 15.  Plaintiff alleges that he was not involved in said commotion, but he was nonetheless shot in the legs.  *Id.* ¶¶ 15-16.  Plaintiff lost consciousness.  *Id.* ¶ 16.  He awoke in the hospital.  *Id.*  While recovering in the hospital, Detective Padilla, and other unnamed police officers, who were responsible for investigating the February 9, 2014 incident ("2014 Incident"), visited Plaintiff.  *Id.* ¶¶ 18, 20.  At that time, Plaintiff alleges that he was told that he was being considered a victim of a crime and was asked whether he could identify who shot him.  *Id.* ¶ 20.

On February 26, 2014, upon his release from the hospital, Plaintiff was arrested in connection with the 2014 Incident.  *Id.* ¶ 23.  Plaintiff was held for approximately one week at a Newark police station before being transferred to the Essex County Jail.  *Id.* ¶ 24.

On March 10, 2015, a grand jury indicted Plaintiff for aggravated assault, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon in connection with the 2014 Incident.  *Id.* ¶ 25.  Plaintiff alleges that the indictment was based upon Detective Padilla's intentionally false testimony.  *Id.* ¶ 26.  Specifically, Plaintiff alleges that Detective Padilla testified that a surveillance video of the 2014 Incident clearly depicted Plaintiff as one of the shooters, despite the allegedly "poor quality" video.  *Id.* ¶¶ 19, 26.  Plaintiff was prosecuted for approximately two years before the indictment was dismissed on June 8, 2016.  *Id.* ¶ 28.

---

[3] The facts in this section are taken from the well-pled allegations in the TAC, which the Court presumes to be true for purposes of resolving the instant motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On June 18, 2016, ten days after the indictment related to the 2014 Incident was dismissed, an incident, involving a physical altercation and gunfire, occurred on Taylor Street in Newark, New Jersey ("2016 Incident"). *Id.* ¶ 29. Plaintiff alleges that he was not involved in the 2016 Incident. *Id.* ¶ 30. Detective Pisano and other unnamed police officers were responsible for investigating the 2016 Incident. *Id.* ¶ 32. The investigation included initial witness interviews. *Id.* ¶ 33. Plaintiff alleges that he was not identified in these initial interviews. *Id.* But in a second witness interview, Miguel Robles Perez identified Plaintiff as an individual involved in the 2016 Incident. *Id.* ¶ 35. Plaintiff alleges that Robles Perez was "forced, threatened and coerced" by Detective Pisano, and the other unnamed police officers, to identify Plaintiff. *Id.* ¶¶ 35-36. Plaintiff further alleges that Detective Pisano, and the other unnamed police officers, in agreement with Detective Padilla and Detective Krusznis, fabricated Plaintiff's involvement in the 2016 Incident as "revenge and retribution" for the recently dismissed charges related to the 2014 Incident and Plaintiff's prior contact with Defendants and other Newark PD members. *Id.* ¶ 37. Plaintiff was subsequently arrested on June 24, 2016. *Id.* ¶¶ 38-39.

On September 1, 2016, Plaintiff was indicted by a grand jury for unlawful possession of a weapon and possession of a weapon for an unlawful purpose in connection with the 2016 Incident. *Id.* ¶ 42. Plaintiff alleges that the indictment was based upon Detective Pisano's intentionally false testimony. *Id.* ¶ 41. Specifically, Plaintiff alleges that Detective Pisano testified that Miguel Robles Perez' properly identified Plaintiff as the shooter in the 2016 Incident, despite having obtained the identification through threats and coercion. *Id.*

On that same day, charges related to the 2014 Incident were presented to the grand jury for a second time. *Id.* ¶ 43. Plaintiff was indicted again, based on Detective Padilla's allegedly false

testimony.  *Id.* ¶ 44.  At this time, Plaintiff was charged with unlawful possession of a weapon, possession of a weapon for an unlawful purpose, riot/failure to disperse, and perjury.  *Id.* ¶ 45.

On May 25, 2018, all charges against Plaintiff related to the 2014 Incident and the 2016 Incident were dismissed on the prosecutor's own motion.  *Id.* ¶ 46.

On May 22, 2020, Plaintiff filed an Initial Complaint, asserting claims arising out of his respective arrests and prosecutions for the 2014 Incident and the 2016 Incident.  D.E. 1.  Plaintiff has since filed an Amended Complaint, D.E. 10, a Second Amended Complaint ("SAC"), D.E. 26, and a TAC, D.E. 41.  The TAC contains claims pursuant to 42 U.S.C. § 1983 ("Section 1983") based upon alleged violations of the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution.  TAC ¶¶ 51-57.  Plaintiff also brings claims for conspiracy, *id.* ¶¶ 58-61, and municipal liability, *id.* ¶¶ 62-72, pursuant to Section 1983.

Defendants now move to dismiss Plaintiff's TAC for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).[4]

---

[4] The Court does not consider the incident and investigation reports attached to Defendants' Reply Brief because they fall outside of the pleadings, and thus, are inappropriate for a Rule 12(b)(6)

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. Finally, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## III.   DISCUSSION

Plaintiff asserts claims pursuant to Section 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory [] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and federal laws. *See Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). To state a claim for relief pursuant to Section 1983, a plaintiff must allege a "deprivation of a constitutional

---

motion. *See Abdul-Ahad v. Essex Cnty. Sheriff's Dep't*, 2022 U.S. Dist. LEXIS 63903, at *18-19 (D.N.J. Apr. 6, 2022) (refusing to consider facts from an incident report in Rule 12(b)(6) motion, "as they are outside of the pleading."); *see also Purvis v. City of Newark*, 2017 U.S. Dist. LEXIS 38403, at *3 n.1 (D.N.J. Mar. 16, 2017) (declining consideration of an arrest and incident report in Rule 12(b)(6) motion because it was not attached as an exhibit to the complaint, not integral, and the plaintiff did not explicitly rely upon its substance).

right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. County of* Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)); *West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Here, Plaintiff asserts several claims pursuant to Section 1983, including conspiracy, false arrest, false imprisonment, malicious prosecution, fabrication of evidence, and *Monell* liability.

## A. Statute of Limitations

Although Defendants do not contend that Plaintiff's false arrest and false imprisonment claims should be dismissed as time-barred,[5] the Court will *sua sponte* dismiss these claims as untimely.

"A district court may *sua sponte* dismiss a complaint on statute of limitations grounds where the time-bar is clear on the face of the complaint and no development of the factual record is required." *Bartley v. New Jersey*, 2022 U.S. App. LEXIS 13668, at *2 n.2 (3d Cir. May 20, 2022) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)); *see also Demby v. Cty. of Camden*, 2021 U.S. App. LEXIS 32077, at *3 (3d Cir. Oct. 26, 2021), *cert. denied sub nom. Demby v. Cty. of Camden, NJ*, 142 S. Ct. 1163 (Feb. 22, 2022) (citations omitted); *Lawson v. City of Vineland*, 2022 U.S. Dist. LEXIS 205993, at *3-4 (D.N.J. Nov. 14, 2022) (dismissing *sua sponte* plaintiff's Section 1983 claims against police officers as barred by statute of limitations).

The statute of limitations for a Section 1983 claim is governed by New Jersey's two-year limitations period for personal injury.  *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *O'Connor v. City of Newark*, 440 F.3d 125,

---

[5] Defendants did raise this contention when moving to dismiss the SAC.  Despite the Court's (Vasquez, J.) agreement with Defendants, the Court nonetheless gave Plaintiff the opportunity to remedy this deficiency in the TAC.

126-27 (3d Cir. 2006); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989).  But the accrual date of a Section 1983 claim is determined by federal law.  *Wallace v. Kato*, 549 U.S. 384, 277 (2007); *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014).  "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'"  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)).

Plaintiff's false arrest and false imprisonment claims accrued on the dates he was "detained pursuant to legal process" because that is when he had reason to know of his injury.  *See Wallace v. Kato*, 549 U.S. 384, 397 (2007); *Lloyd v. Ocean Twp.* Counsel, 857 F. App'x 61, 64 (3d Cir. 2021) (dismissing false arrest and false imprisonment claims as time-barred because plaintiff was detained over two years before complaint was filed); *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (noting false arrest claim accrues on date of arrest).  Therefore, in connection with the 2014 Incident, Plaintiff's false arrest and false imprisonment claims accrued on February 26, 2014, when he was arrested.  *See* TAC ¶ 23.  And with respect to the 2016 Incident, Plaintiff's false arrest and false imprisonment claims accrued on June 24, 2016, when he was arrested.  *See id.* ¶ 39.  Accordingly, the statute of limitations for Plaintiff's false arrest and false imprisonment claims expired on February 26, 2016 and June 24, 2018, respectively.  Plaintiff did not file his Initial Complaint until May 22, 2020, *see* D.E. 1, which is well beyond the statute of limitations period for these claims.

As explained in the Court's (Vasquez, J.) decision granting Defendants' motion to dismiss the SAC, D.E. 39, Plaintiff's false arrest and false imprisonment claims, as pled in the SAC

appeared time-barred.  Despite having notice of the statute of limitations issue and an opportunity to respond, *see id.* at 20 n.7, Plaintiff did not address this issue when filing the TAC.  *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) (concluding that district court should grant notice and opportunity to be heard before dismissing *sua sponte* complaint alleging Section 1983 claims on statute of limitations grounds); *see also Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (noting district courts may on their own initiative dismiss untimely claims so long as the parties are afforded fair notice and an opportunity to present their motions).  Thus, the Court finds that despite an earlier caution regarding untimeliness when the SAC was dismissed, Plaintiff's TAC nevertheless also fails to plead any facts to show that his false arrest and false imprisonment claims are timely.  Accordingly, the Court dismisses these two claims with prejudice.  *See Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003) ("[A]ny amendment of [the] complaint would have been futile because the amended complaint could not have withstood a motion to dismiss on the basis of the statute of limitations.").

Plaintiff also alleges malicious prosecution and fabrication of evidence claims.  The time to raise these claims "'does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in [his] favor.'"  *Lloyd*, 857 F. App'x at 64 (citation omitted); *Coello v. DiLeo*, 43 F.4th 346, 354-55 (3d Cir. 2022) (holding that plaintiff's Section 1983 claims were timely-filed in 2020 because those claims did not accrue until plaintiff's underlying 2007 criminal conviction was vacated in 2018); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  Here, in connection with both the 2014 Incident and the 2016 Incident, all charges brought against Plaintiff were dismissed on May 25, 2018.  *See* TAC ¶ 46.  Plaintiff's Initial Complaint—filed on May 22, 2020—was, therefore, filed within the two-year statute of limitations period.

Accordingly, the Court will address the issues raised in Defendants' motion to dismiss in connection with Plaintiff's malicious prosecution and fabrication of evidence claims.

### B. Conspiracy Claim

Plaintiff brings a conspiracy claim pursuant to Section 1983. Defendants assert that Plaintiff's conspiracy claim should be dismissed for two independent reasons. First, Defendants contend that Plaintiff does not plausibly assert that Defendants acted in concert or in agreement. D.E. 47-1 "Mot." at 31. Second, Defendants contend that Plaintiff fails to set forth any particularized allegations against any of the individual defendants. *Id.* The Court agrees with Defendants.

To state a Section 1983 conspiracy claim, a plaintiff must: (1) allege "that persons acting under color of state law reached an understanding to deprive him of his constitutional rights[;]" and (2) "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Ross v. Graf*, 2021 U.S. Dist. LEXIS 186041, at *7-8 (D.N.J. Sept. 28, 2021) (dismissing plaintiff's conspiracy claims where plaintiff broadly alleged that defendants "conspired" and "worked together" to violate his constitutional rights, but did not allege an agreement between defendants, nor did he "provide any particularized factual support of an agreement or concerted action"). "Furthermore, the plaintiff must plead, with particularity, the circumstances of the alleged conspiracy so that the defendant is put on notice of his or her alleged misconduct." *Cali v. Borough of Seaside Park*, 2020 U.S. Dist. LEXIS 203185, at *17 (D.N.J. Oct. 30, 2020) (quotation omitted).

Here, Plaintiff makes broad allegations of a conspiracy: "Defendants have acted in concert to violate [P]laintiff's civil rights and further conspired to charge [P]laintiff with crimes he did not

commit[,]" TAC ¶ 48; and "Defendants engaged in a joint venture, conspired together, and had an agreement, to act in concert to commit the unlawful acts described herein for purpose of inflicting a constitutional injury and/or wrong against Plaintiff[] and did in fact commit an overt act proximately causing [P]laintiff[] to suffer damages[,]" *id.* ¶ 59.  But Plaintiff does not provide any specific factual allegations to support his allegations.  *See* TAC ¶¶ 58-61.

The Court finds unconvincing Plaintiff's argument that his conspiracy claim is adequately pled because the TAC alleges that "Defendant Detective Richard Pisano intentionally and wrongfully deprived plaintiff of his constitutional rights as part of an agreement with Defendants Detective Padilla and Defendant Detective Michael Krusznis as revenge and retribution for the dismissal of the criminal charges stemming from the February 9, 2014 incident, and for his prior contact with [D]efendants and/or other members of [D]efendant Newark Police Department." D.E. 52 "Opp'n" at 24 (citing TAC ¶¶ 37, 47-48).  At best, these allegations are conclusory, factually unsupported legal conclusions, which rely on Plaintiff's suspicion and speculation, rather than on any facts.  *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 244 (3d Cir. 2016) (explaining that plaintiff must rely on more than his own suspicion and speculation to support a conspiracy claim); *Livingston v. Borough of Edgewood*, 430 F. App'x 172, 178 (3d Cir. 2011) (affirming dismissal of conspiracy claims due to plaintiff's failure to proffer evidence to support a reasonable finding of conspiratorial agreement or concerted efforts among defendants); *Ross*, 2021 U.S. Dist. LEXIS 186041, at *8 (emphasizing that plaintiff's deficient conspiracy claim "does not articulate how, where, or when the Defendants entered into an agreement, does not allege the period of the conspiracy, and only broadly speculates as to why Defendants may have cooperated."); *Prince v. Aiellos*, 2010 U.S. Dist. LEXIS 108916, at *28 (D.N.J. Oct. 12, 2010) ("It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm

or even that the alleged perpetrators of the harm acted in conscious parallelism.") (citation omitted).

Furthermore, in granting Defendants' motion to dismiss the SAC, the Court (Vasquez, J.) cautioned Plaintiff that his conspiracy claim consisted of "threadbare allegations" and was made in a "conclusory manner." *See* D.E. 39 at 16. Despite having had notice and opportunity to remedy this deficiency twice, Plaintiff's conspiracy claim in the TAC similarly consists of threadbare allegations. Accordingly, the Court dismisses Plaintiff's conspiracy claim without prejudice, but cautions Plaintiff against deficiently pleading this claim again. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (providing "repeated failure to cure deficiencies by amendments previously allowed" as a reason to deny a party the opportunity amend its pleading).

### C. Malicious Prosecution Claim

Plaintiff asserts a malicious prosecution claim against Defendants. Defendants argue that Plaintiff's claim fails because there was probable cause for Plaintiff's arrest and charges.[6] Mot. at 20. The Court finds that Plaintiff has not plausibly pled a lack of probable cause, which, in turn, requires dismissal of Plaintiff's malicious prosecution claim.

To plausibly plead a Section 1983 malicious prosecution claim, a plaintiff must establish that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor;[7] (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of legal proceeding.

---

[6] Defendants simultaneously raise their probable cause argument with respect to Plaintiff's false arrest claim. As noted, the Court will dismiss the false arrest claim as untimely, and thus, the Court only addresses Defendants' argument with respect to the malicious prosecution claim.

[7] To satisfy this element, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).

*Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).  Although prosecutors are typically responsible for initiating criminal proceedings, a police officer may be liable for malicious prosecution where the officer "influenced or participated in the decision to institute criminal proceedings."  *Id.* at 297.

Whether Plaintiff's malicious prosecution claim survives ultimately turns on the probable cause element.   "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."  *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

"A police officer may be liable for civil damages for an arrest if "no reasonable competent officer' would conclude that probable cause exists."  *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  That a "criminal defendant was ultimately acquitted does not imply that there was no probable cause to charge him; in fact the disposition of the charges 'is irrelevant to the probable cause analysis.'"  *Evans v. City of Newark*, 2016 U.S. Dist. LEXIS 62070, at *42 (D.N.J. May 10, 2016) (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)) (citation omitted); *see also Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003) (explaining probable cause for arrest may have existed even if suspect did not actually commit crime).

But a finding of probable cause is undermined where a police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood" and "[s]uch statements or omissions are material, or necessary to the finding of probable cause."  *Evans*, 2016 U.S. Dist. LEXIS 62070, at *43 (quoting *Wilson*, 212 F.3d at 786-87).  When pursuing a charge or an arrest warrant against an individual, police officers cannot

rely on facts of which they have a "high degree of awareness of [their] probable falsity[.]"  *Id.* (quoting *Wilson*, 212 F.3d at 786-87).  To make this determination, the appropriate inquiry is whether the police officer, when viewing all the available evidence, "entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information [] reported."  *Id.* (quoting *Wilson*, 212 F.3d at 786-87).  Additionally, a police officer must disclose known facts that any reasonable person would have known was the kind of information that a judge would wish to know in making a probable cause determination.  *Id.* (quoting *Wilson*, 212 F.3d at 786-87) (quotation marks omitted).

Here, Plaintiff makes a series of factually unsupported, conclusory statements that do not plausibly plead that Defendants had no probable cause when they arrested and brought charges against him.  For example, with respect to the 2014 Incident, Plaintiff pleads: "Despite knowing after a full investigation there was no evidence to suggest that [P]laintiff had committed a crime, [Defendants] knowingly and falsely claimed that said surveillance video depicted [P]laintiff as being involved in the February 9, 2014 gun fight[;]" Defendants "knowingly and falsely made those claims so that [they] could arrest [P]laintiff [] and charge him[;]" and Defendants "arrested [P]laintiff knowing that he/they did not have probable cause to do so – as he/they knew that there was no evidence linking [P]laintiff to a crime. Rather, Defendants [] made said false claims and arrested [P]laintiff not to bring him to justice, but to punish [P]laintiff for his prior contact with [Defendants because they] falsely determined that [P]laintiff was being uncooperative when he could not identify who had shot him during his hospital interview."  TAC ¶ 23.

And, with respect to the 2016 Incident, Plaintiff pleads: "Despite knowing after a full investigation there was no evidence to suggest that [P]laintiff had committed a crime, [Defendants] knowingly and falsely claimed [P]laintiff was involved in the June 18, 2016 incident, using the

forced and coerced statement/identification as support[;]" Defendants "knowing the information was false and obtained through threats and coercion – used that witness statement/identification with a reckless disregard for the truth in his/their application for an arrest warrant in order to falsely establish probable cause. Defendants [] did so intentionally and wrongfully to deprive [P]laintiff of his constitutional rights as part of an agreement [with the other Detective Defendants] as revenge and retribution for the recent dismissal of the criminal charges against [P]laintiff stemming from the February 9, 2014 incident and for his prior contact with [D]efendants and/or other members of [Newark PD;]" *id.* ¶ 37, and based upon Defendants "knowing and intentional use of the forced and coerced identification, he/they was/were able to obtain an arrest warrant for [P]laintiff," *id.* ¶ 38.

Like the Initial Complaint and the SAC, Plaintiff's TAC lacks meaningful factual content to support a lack of probable cause on behalf of Defendants when they arrested and charged him for the 2014 Incident and the 2016 Incident. *See Nieves v. Fahmy*, 2016 U.S. Dist. LEXIS 159057, at *10 (E.D.N.Y. Nov. 16, 2016) (dismissing malicious prosecution claim where complaint only made "vague and conclusory claims that 'false information and evidence, including the possession of [marijuana]' was used to form the basis of 'false charges [] brought against the plaintiff'"). And while "[d]etailed factual allegations" are not required at the pleading stage, "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; the complaint must include "factual enhancements" and not just conclusory statements. *Ashcroft*, 556 U.S. at 678 (citations omitted). Thus, the Court concludes that Plaintiff has not plausibly pled his malicious prosecution claim. Accordingly, the Court dismisses this claim without prejudice.

D. *Monell* **Claims**

Plaintiff brings municipal liability claims against the City and Newark PD for unspecified policies or customs and allegedly failing to provide adequate training and supervision to police officers.  TAC ¶¶ 62-72.  Defendants assert that Plaintiff's municipal liability claim should be dismissed for two reasons.  First, Defendants contend that Plaintiff fails to identify a municipal "policy" or "custom" that caused his injury.  Second, Defendants contend that Plaintiff fails to demonstrate the existence of a "plausible nexus" or "affirmative link" between the municipality's custom and the deprivation of Plaintiff's constitutional rights.  The Court agrees with Defendants.

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), a municipality can only be held liable pursuant to Section 1983 if its "policy or custom" or "failure to train or supervise" causes a constitutional violation.  *See Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).  *Monell* claims apply only to local government units, "which are not considered part of the State for Eleventh Amendment purposes."  *Id.* at 690 n.55.  And a municipality cannot be liable under Section 1983 for the acts of its employees on a theory of *respondeat superior*.  *Id.* at 690-91; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*.") (citations omitted).

A plaintiff asserting a *Monell* claim based on a "policy or custom" must identify the specific policy or custom at issue.  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (finding that a properly pled *Monell* policy or custom-based claim "must identify a custom or policy, and specify what exactly that custom or policy was.").  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Andrews v. City of Philadelphia*, 895 F.2d 1469,

1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (Becker, J.).

Additionally, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries. *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp*, 95 F.3d at 1213). "He may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Id.* (quoting *Bielevicz*, 915 F.2d at 850). Where a custom is at issue, an affirmative link is established by demonstrating that the municipality had knowledge of "similar unlawful conduct in the past, [] failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury." *Id.* (quoting *Bielevicz*, 915 F.2d at 851). But a plaintiff's claim is not deficient solely because it does not identify a responsible decisionmaker or does not prove that the municipality formally approved of the custom. *See id.* (citing *Bielevicz*, 915 F.2d at 850); *see also Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986).

Alternatively, a plaintiff may assert a *Monell* claim based on a "failure to train or supervise," but the pleading requirements differ from those detailed in the preceding paragraph because an unconstitutional policy need not be alleged. *Id.* (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Instead, in this context, a plaintiff must demonstrate that a municipality's failure to train or supervise its employees "reflects a deliberate or conscious choice." *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (internal quotation marks omitted)). For claims involving police officers, a failure to train or supervise claim can only serve as the basis for Section 1983 liability where the failure "amounts to deliberate

indifference to the rights of persons with whom the police come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is plausibly pled where a plaintiff shows that: (1) "municipal policy makers know that employees will confront a particular situation[;]" (2) "the situation involves a difficult choice or a history of employees mishandling[;]" and (3) "the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

Significantly, "a pattern of similar constitutional violations by untrained employees is [typically] necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Without a pattern, deliberate indifference "may be established by a single incident in the 'rare' circumstance that the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under Section 1983 without proof of a pre-existing pattern of violations." *Sherill v. City of Hoboken*, 2020 U.S. Dist. LEXIS 3090, at *28 (D.N.J. Jan. 6, 2020) (citing *Connick*, 563 U.S. at 62).

Finally, like with a policy or custom-based claim, a failure to train or supervise-based claim requires that a plaintiff allege that the failure was the "proximate cause" of his injuries. Specifically, "the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks omitted).

Here, Plaintiff alleges that the customs, policies, usages, practices, procedures, and rules of the City and Newark PD allowed and permitted police officers to "fabricate evidence, coerce witness statements, use knowingly false information to obtain arrest warrants, knowingly testify

falsely at Grand Jury proceedings, initiating and continuing criminal proceedings without evidence of criminal activity and/or continuing criminal proceedings despite the presence of exculpatory evidence." TAC ¶ 66.  Plaintiff further alleges that the City and Newark PD's failure to take any corrective action despite knowledge of police officers' consistent violation of the rights of citizens constitutes deliberate indifference to Plaintiff's safety, well-being, and constitutional rights.  *Id.* ¶ 68.  Lastly, Plaintiff alleges that the City, "as municipal policymaker in the training and supervision of [D]efendant['s] police officers and/or officials, has pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer constitutional violations…" *Id.* ¶ 71.  Thus, Plaintiff attempts to make out both policy or custom-based and failure to train or supervise-based *Monell* claims.

But, the TAC, like the Initial Complaint and the SAC, sounds only in general terms without specifying what custom or policy or failure to train or supervise the City and Newark PD engaged in that led to Plaintiff's alleged constitutional injuries.  *See Clayton v. City of Newark*, 2021 U.S. Dist. LEXIS 244542, at *13-14 (D.N.J. Dec. 22, 2021) ("Yet [plaintiff] cannot describe the series of acts that she believes constitute the challenged practice except at the highest level of generality. If a practice is too expansively defined, as Terry's is, it becomes nonsensical to charge a municipal entity with notice of such practice[.]") (quoting *Terry v. Cty. of Milwaukee*, 2018 U.S. Dist. LEXIS 93298, at *22 (E.D. Wis. June 4, 2018)).  With respect to his policy or custom-based claim, Plaintiff merely makes wholly conclusory and highly generalized assertions without pleading any facts to support the existence of any policy or custom.  *See Glaesener v. City of Jersey City*, 2022 U.S. Dist. LEXIS 132361, at *9-10 (D.N.J. July 25, 2022) (dismissing *Monell* claims where plaintiff failed to support his custom or policy-based claims with any facts); *see also Geissler v. City of Atlantic City*, 198 F. Supp. 3d 389, 396 (D.N.J. 2016) ("Having failed to identify any

municipal policy or custom in her Complaint, Plaintiff fails to state a claim against the City []
under [Section] 1983[.]").  And with respect to his failure to train or supervise-based claim,
Plaintiff has also not alleged any facts amounting to "deliberate indifference" on the part of the
City and Newark PD to support his claim.  *See Thomas*, 749 F.3d at 222.

      Thus, the Court concludes that Plaintiff has not plausibly pled his *Monell* claims.
Accordingly, the Court dismisses Plaintiff's *Monell* claims against the City and Newark PD with
prejudice.  *See Sherill*, 2020 U.S. Dist. LEXIS 3090, at *29 (dismissing *Monell* claims with
prejudice after noting that despite plaintiff's repeated opportunities in previous iterations of the
complaint to remedy deficiencies, he still "add[ed] nothing materially different" from the previous
iteration of the complaint).

### E.  Fabrication of Evidence Claim

      Plaintiff concedes that Detective Padilla and Detective Pisano's testimony before the grand
jury is protected by absolute immunity under *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012), and
*Peteete v. Asbury Park Police Dep't*, 477 F. App'x 887, 889 (3d Cir. 2012), which both state that
"a grand jury witness has absolute immunity from any [Section] 1983 claim based on the
witness'[s] testimony."  Accordingly, the Court does not consider Plaintiff's fabrication of
evidence claim to the extent that it extends to the testimony given by the detectives before the
grand jury.  But the Court will consider whether Plaintiff makes out a fabrication of evidence claim
outside of the grand jury proceedings.

      In *Halsey v. Pfeiffer*, the Third Circuit held that a fabrication of evidence claim pursuant to
Section 1983 is cognizable "if a defendant has been *convicted* at trial at which the prosecution has
used fabricated evidence."  750 F.3d at 294 (emphasis added).  And in *Black v. Montgomery*, the
Third Circuit explained that an acquitted defendant can only bring a fabrication of evidence claim

if "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." 835 F.3d 358, 371 (3d Cir. 2016). But the Third Circuit has explicitly cautioned that "courts in this Circuit should not permit a criminal defendant who later brings a civil action against state actors who had been involved in his prosecution to [go] beyond the scope of [the *Halsey*] holding." 750 F.3d at 295.

In light of *Halsey*'s guidance on the narrow scope of fabrication of evidence claims, it is unusual for these types of claims to survive. *See id.* ("[W]e expect that it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case."). Thus, to properly assert a fabrication of evidence claim, a plaintiff must demonstrate: a "'meaningful connection' between the injury and the use of the fabricated evidence[;]" and that "the evidence [is] 'so significant that it could have affected the outcome of the criminal case[.]'" *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69-70 (3d Cir. 2017) (quoting *Halsey*, 750 F.3d at 295). But "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* (quoting *Halsey*, 750 F.3d at 295). Additionally, relevant for a motion to dismiss, the Court must look for allegations describing "persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith." *Id.* (quoting *Halsey*, 750 F.3d at 295) (internal quotation marks omitted).

Here, Plaintiff's fabrication of evidence claim fails for two reasons, both of which are independently fatal to Plaintiff's claim. First, Plaintiff was not "convicted at trial." *See id.* (affirming district court's dismissal of fabrication of evidence claim where plaintiff was not convicted at her state criminal trial). The charges brought against Plaintiff for the 2014 Incident and the 2016 Incident were dismissed before a trial even occurred. Second, Plaintiff's conclusory

allegations are insufficient to plead a fabrication of evidence claim.[8] For example, Plaintiff pleads that Detective Padilla "knowingly and falsely claimed that [the] surveillance video depicted plaintiff as being involved in the February 9, 2014 gun fight," TAC ¶ 23, but nowhere in the TAC does Plaintiff provide any factual basis for this allegation. Plaintiff similarly makes a factually unsupported allegation with respect to the 2016 Incident: Detective Pisano "knowingly and falsely claimed [P]laintiff was involved in the June 18, 2016 incident, using the forced and coerced statement/identification as support[,]" "[d]espite knowing after a full investigation there was no evidence to suggest that plaintiff had committed a crime[.]" *Id.* ¶ 37. These allegations without more are unpersuasive. Accordingly, the Court dismisses Plaintiff's fabrication of evidence claim with prejudice.

### F. Qualified Immunity

Because the Court finds that Plaintiff has failed to plausibly plead his claims, the Court need not reach Defendants' qualified immunity argument. *See Gannaway v. Karetas*, 438 F. App'x 61, 67 (3d Cir. 2011) ("As there was no constitutional violation, we need not engage in an analysis of qualified immunity."); *see also Craven v. Leach*, 2015 U.S. Dist. LEXIS 187209, at *20 n.7 (D.N.J. Oct. 1, 2015) (concluding that because plaintiff did not plausibly plead a constitutional violation with respect to claims asserted then the court did not need to analyze whether defendants were entitled to qualified immunity).

### G. Punitive Damages

Defendants argue that any claim for punitive damages should be dismissed. Mot. at 35. Plaintiff concedes this point. Opp'n at 27. Accordingly, the Court dismisses Plaintiff's prayer for punitive damages.

---

[8] The Court does not consider Plaintiff's allegations concerning grand jury testimony here.

**H. Stay Request**

Defendants request a stay pending the outcome of this motion.  Mot. at 36.  This Opinion moots that request.

**I. Leave to Amend**

Although Plaintiff has not sought leave to amend the TAC, Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given "when justice so requires." "[I]nadequate complaints should be dismissed without granting leave to amend only if the amendment would be inequitable or futile."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1140, 1434 (3d Cir. 1997).  Amendment would be futile "if the amended complaint would fail to state a claim for relief under Rule 12(b)(6)."  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2001).  Accordingly, to the extent that the Court dismisses Plaintiff's claims without prejudice, Plaintiff will be given leave to amend the TAC.[9]

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.   The Court dismisses Plaintiff's false arrest, false imprisonment, fabrication of evidence, and *Monell* claims pursuant to Section 1983 with prejudice, and Plaintiff's conspiracy and malicious prosecution

---

[9] The Court cautions Plaintiff that the TAC straddles the "shotgun pleading" line.  The Eleventh Circuit has recently identified several types of shotgun pleadings, including: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts[;]" (2) a complaint that is "replete with conclusory, vague, and immaterial facts not [] connected to any particular cause of action[;]" and (3) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Here, each count of the TAC incorporates by reference all allegations contained in the preceding numbered paragraphs.  Moreover, the TAC is replete with conclusory allegations without factual support.

claims pursuant to Section 1983 without prejudice.  Plaintiff will have thirty (30) days to file an amended complaint.  An appropriate Order accompanies this Opinion.

Dated: January 23, 2023

_____
Evelyn Padin, U.S.D.J.