**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

JOSE GUZMAN,

|                          |
| Plaintiff,               |

v.

CITY OF NEWARK, *et al.*,

|                          |
| Defendants.              |

Case No. 20cv6276 (EP) (JSA)

**OPINION**

**PADIN, District Judge.**

Plaintiff Jose Guzman ("Plaintiff") brings this civil rights action against Defendants City of Newark ("City"), Newark Police Department ("Newark PD"), Newark PD Detectives Feliberto Padilla ("Detective Padilla"), Richard Pisano ("Detective Pisano"), and Michael Krusznis ("Detective Krusznis"),[1] and two fictitious parties, following two separate incidents, in 2014 and 2016, which resulted in Plaintiff's arrest and prosecution. Defendants move to dismiss the Fourth Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 62-1 ("Mot."). The Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion will be **GRANTED** and Plaintiff's FAC will be **DISMISSED** *with prejudice*.

---

[1] The three named Newark PD Detectives will collectively be referred to as "Detective Defendants."

## I.    BACKGROUND[2]

On February 9, 2014, at approximately 3:00 a.m., Plaintiff stopped for food at Tony's Marisqueria in Newark, New Jersey.   D.E. 58 ("FAC") ¶¶ 13-14.   Upon exiting Tony's Marisqueria, Plaintiff "witnessed a commotion" involving gunfire.  *Id.* ¶ 15.  Plaintiff alleges that despite being shot in the legs, he was not involved in the "commotion, did not possess a gun[,] and did not fire any shots."  *Id.*  Plaintiff lost consciousness and awoke in the hospital.  *Id.* ¶ 16.  While recovering, Detective Padilla and other unnamed police officers, responsible for investigating the February 9, 2014 incident ("2014 Incident"), visited Plaintiff in the hospital.  *Id.* ¶¶ 18, 20.  Plaintiff alleges he was told that he was considered a victim of a crime and was asked whether he could identify who shot him.  *Id.* ¶ 20.  Plaintiff was unable to identify who shot him nor anyone else involved in the shooting.  *Id.*

On February 26, 2014, Plaintiff was arrested in connection with the 2014 Incident.  *Id.* ¶ 23.  Plaintiff was held at a Newark police station for approximately one week before being transferred to the Essex County Jail.  *Id.* ¶ 26.

On March 10, 2015, in connection with the 2014 Incident, a grand jury indicted Plaintiff for aggravated assault, unlawful possession of a weapon, and unlawful possession of a weapon for an unlawful purpose ("2014 Indictment").  *Id.* ¶¶ 27, 29.  Plaintiff alleges the indictment was based upon Detective Padilla's intentionally false testimony.  *Id.* ¶ 28.  Specifically, according to Plaintiff, Detective Padilla knowingly, intentionally, and falsely testified that a surveillance video of the 2014 Incident clearly depicted Plaintiff as one of the shooters, despite the video's alleged "poor quality."  *Id.* ¶¶ 19, 28.  Detective Padilla allegedly gave this testimony to falsely indict and

---

[2] The facts in this section are taken from the well-pled allegations in the FAC, which the Court presumes to be true for purposes of resolving the instant motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

charge him with crimes he did not commit "in order to punish him" for being uncooperative when he could not identify who shot him, and for Plaintiff's prior contact with Newark PD officers. *Id.* ¶ 28. Plaintiff was subsequently prosecuted for approximately two years before the indictment was ultimately dismissed, on June 8, 2016. *Id.* ¶ 30.

On June 18, 2016, ten days after the indictment stemming from the 2014 Incident was dismissed, another incident, involving a physical altercation and gunfire, occurred on Taylor Street in Newark, New Jersey ("2016 Incident"). *Id.* ¶¶ 31-32. Plaintiff alleges he was not involved in the 2016 Incident. *Id.* ¶ 32. Detective Pisano and other unnamed police officers were responsible for investigating the 2016 Incident. *Id.* ¶ 33. The officers investigating the 2016 Incident interviewed numerous witnesses. *Id.* ¶ 34. Plaintiff alleges he was not identified in these initial interviews. *Id.* But in a second witness interview, Miguel Robles Perez ("Robles") identified Plaintiff as the shooter in the 2016 Incident. *Id.* ¶ 38. According to Plaintiff, Detective Pisano and other unnamed police officers "forced, threatened, and coerced" Robles to identify Plaintiff by telling Robles he would be arrested on fabricated charges if he did not do so. *Id.*

Plaintiff further alleges that Detective Pisano, Detective Krusznis, and other unnamed police officers lacked probable cause to arrest Plaintiff for the 2016 Incident. *Id.* ¶ 40. Plaintiff alleges the Detective Defendants agreed to fabricate Plaintiff's involvement in the 2016 Incident to "obtain retribution" for Plaintiff's dismissed indictment stemming from the 2014 Incident. *Id.* ¶ 41. On June 24, 2016, in connection with the 2016 Incident, Plaintiff was arrested. *Id.* ¶ 42. And on September 1, 2016, Plaintiff was indicted by a grand jury for unlawful possession of a weapon and possession of a weapon for an unlawful purpose. *Id.* ¶¶ 42-43.

Also on September 1, 2016, charges stemming from the 2014 Incident were presented to a grand jury for the second time. *Id.* ¶ 43. Again, Plaintiff alleges Detective Padilla knowingly,

intentionally, and falsely testified that the surveillance video from the 2014 Incident clearly depicted Plaintiff as a shooter, as well as that the intent behind Padilla's testimony was to punish Plaintiff for the previously dismissed charges stemming from the 2014 Incident and for Plaintiff's prior contact with Defendants and other Newark PD officers. *Id.* ¶ 44. Plaintiff was charged with unlawful possession of a weapon, possession of a weapon for an unlawful purpose, riot/failure to disperse, and perjury ("2016 Indictment"). *Id.* ¶¶ 44-45.

On May 22, 2018, all charges against Plaintiff, stemming both from the 2014 Incident and the 2016 Incident, were dismissed upon the prosecutor's motion. *Id.* ¶ 46.

On May 22, 2020, Plaintiff filed his Initial Complaint, asserting claims arising from his respective arrests and charges stemming from the 2014 Incident and the 2016 Incident. D.E. 1. Plaintiff has since filed an Amended Complaint, D.E. 10, a Second Amended Complaint ("SAC"), D.E. 26, a Third Amended Complaint ("TAC"), D.E. 41, and now a FAC. Like its predecessor iterations, the FAC brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for malicious prosecution and conspiracy, alleging Fourth and Fourteenth Amendment violations, arising from both the 2014 Incident and the 2016 Incident. FAC ¶¶ 50-69.[3]

Defendants now move to dismiss Plaintiff's FAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any

---

[3] The FAC contains a conspiracy claim labeled as one brought pursuant to 42 U.S.C. § 1985 ("Section 1985"). However, based upon the substance of the pleadings and Plaintiff's subsequent treatment of the claim in his brief, the FAC's conspiracy claim will be treated as one brought pursuant to Section 1983. Regardless, Plaintiff's claim would also fail under Section 1985.

reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belickick*, 605 F.3d, 230 (3d Cir. 2010).[4]

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 579. Finally, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

## III.   DISCUSSION

Plaintiff's remaining malicious prosecution and conspiracy claims are brought pursuant to Section 1983. In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory [] subjects, or causes to

---

[4] The substance of the incident and investigation reports attached to Defendants' reply is not considered for purposes of Defendants' motion. *See Abdul-Ahad v. Essex Cnty. Sheriff's Dep't*, 2022 WL 1027758, at *7 (D.N.J. Apr. 6, 2022) (refusing to consider facts from an incident report in Rule 12(b)(6) motion, "as they are outside of the pleading."); *see also Purvis v. City of Newark*, 2017 WL 1032991, at *1 n.1 (D.N.J. Mar. 16, 2017) (declining consideration of an arrest and incident report in Rule 12(b)(6) motion because it was not attached as an exhibit to the complaint, not integral, and the plaintiff did not explicitly rely upon its substance).

> be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  Thus, a Section 1983 claim requires a plaintiff to demonstrate that he was deprived of a constitutional right and that the deprivation was caused by a person acting under the color of state law.  *Phillips*, 515 F.3d at 235 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).

### A.  Section 1983 Malicious Prosecution Claims

Plaintiff asserts two malicious prosecution claims pursuant to Section 1983 against Defendants, stemming from the 2014 Incident and the 2016 Incident, respectively.  Here, Plaintiff's malicious prosecution claims cannot survive if Plaintiff has—as Defendants argue— failed to plausibly plead that probable cause did not exist when he was arrested and charged for the 2014 Incident and the 2016 Incident, respectively.  *See* Mot. at 22.  Despite Plaintiff's disagreement with this argument, D.E. 67 ("Opp.") at 19, the Court agrees with Defendants.

To bring a malicious prosecution claim pursuant to Section 1983, a plaintiff must establish: (1) the defendant initiated a criminal proceeding; (2) without probable cause; (3) maliciously or for a purpose other than bringing the plaintiff to justice; (4) causing the plaintiff to suffer deprivation of liberty consistent with the concept of search and seizure; and (5) the criminal proceeding ended in the plaintiff's favor.  *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).  Although prosecutors are typically responsible for initiating criminal proceedings, a law enforcement officer may be liable for malicious prosecution if the officer "influenced or participated in the decision to institute criminal proceedings."  *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014).

Probable cause being the only disputed element here, it is the only one the Court analyzes with respect to Plaintiff's malicious prosecution claims.   "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).   The existence of probable cause does not require the conclusion that a police officer was correct in hindsight.  *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005).  But mistakes made "must be those of reasonable men."  *Cann v. Wanner*, 2006 WL 1805977, at *4 (E.D. Pa. June 28, 2006) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).  And a police officer must not have "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood" and "[s]uch statements or omissions are material, or necessary to the finding of probable cause." *Evans v. City of Newark*, 2016 WL 2742862, at *15 (D.N.J. May 10, 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)).

Moreover, a grand jury indictment constitutes *prima facie* evidence of probable cause, thereby creating a presumption that a plaintiff must overcome to establish malicious prosecution. *Rose v. Bartle*, 871 F.2d 331, 352 (3d Cir. 1989).  To overcome this presumption, a plaintiff must allege specific instances of "fraud, perjury or other corrupt means[]" used to procure the grand jury indictment.  *Id.* (affirming Rule 12(b)(6) dismissal of malicious prosecution claim brought under Section 1983 where the plaintiff did not allege specific instances of witnesses perjuring themselves); *Liberty Bell Temple III v. Trenton City Police Dep't*, 2019 WL 4750836, at *22 (D.N.J. Sept. 30, 2019) (same); *Mobilio v. Dep't of Law & Pub. Safety of N.J.*, 2008 WL 2704826

(D.N.J. July 7, 2008) (applying *Rose* standard to malicious prosecution claims brought under Section 1983).

### 1. 2014 Incident

Here, Defendants argue that there was probable cause to arrest and charge Plaintiff for the 2014 Incident because a surveillance video depicted Plaintiff as a shooter in the altercation.  Mot. at 28.  Plaintiff responds that the FAC plausibly alleges that Defendants lacked probable cause, particularly referring to the following allegations: Defendants "claimed to rely upon said surveillance video, alleging that it depicted [P]laintiff as being involved in the [2014 Incident;]" Defendants "knew [P]laintiff could not be identified in the video and only made that claim so he/they could arrest [P]laintiff[;]" Defendants "arrested and charged [P]laintiff without probable cause when he/they knowingly, deliberately and with reckless disregard for the truth falsely claimed that [P]laintiff could be identified in said surveillance video[.]"  FAC ¶¶ 24-25; Opp. at 21-22.

But these allegations are factually unsupported, conclusory statements that hardly vary from those previously made in the TAC, SAC, and Initial Complaint.  Moreover, these allegations do little to overcome the presumption of probable cause created by the grand jury indictment related to the 2014 Incident.  Specifically, evident from Plaintiff's FAC is his "fail[ure] to show any evidence that the presentment was based upon something other than testimony or other evidence which witnesses believed to be true at the time the information was presented to the grand jury."  *See Rose*, 871 F.2d at 352 (citations omitted); *compare* FAC ¶ 25 (alleging that Defendants "arrested and charged plaintiff without probable cause when he/they knowingly, deliberately and with reckless disregard for the truth falsely claimed that plaintiff could be identified in said surveillance video") *with* TAC ¶ 26 (alleging that Detective Padilla "knowingly, intentionally and

falsely testified that surveillance video of the [2014 Incident] clearly depicted plaintiff as one of the shooters"). Without any basis to support that Detective Padilla perjured himself before the grand jury, Plaintiff's allegation that Detective Padilla falsely identified Plaintiff as a shooter in the surveillance video is merely conclusory. *See Zisa v. Haviland*, 2020 WL 1527862, at *10 (D.N.J. March 31, 2020) (dismissing malicious prosecution claim because plaintiff's allegations were not sufficiently specific and failed to identify any false testimony).

Additionally, Plaintiff has not alleged facts demonstrating that Detective Padilla did not believe that there was at least a fair probability that Plaintiff was involved in the shooting. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue.") (internal citation omitted). As the Court (Vazquez, J.) noted in dismissing the SAC, even accepting Plaintiff's assertion that the surveillance video did not depict him as a shooter, Detective Padilla may have obtained other evidence, in addition to Plaintiff's presence at the scene, which may have created a fair probability that Plaintiff was involved in the shooting. D.E. 39 at 11-12 (Vazquez, J.).

Accordingly, Plaintiff's malicious prosecution claim stemming from the 2014 Incident will be dismissed with prejudice. *See, e.g.*, *Wright*, 409 F.3d at 604 (dismissing plaintiff's malicious prosecution claim because plaintiff failed to demonstrate that she was arrested and prosecuted without probable cause); *Forman v. Davis*, 371 U.S. 178, 182 (1962) (noting that a court may deny a party an opportunity to amend its pleadings if there has been "repeated failure to cure deficiencies by amendments previously allowed"); *White v. Pagotto*, 2023 WL 4929306, at *2 n.3 (3d Cir. Aug. 2, 2023) (affirming District Court's ruling dismissing plaintiff's claims with prejudice because plaintiff was afforded multiple opportunities to amend and yet failed to plausibly state a claim for relief).

2.   *2016 Incident*

Furthermore, Defendants argue that there was probable cause to arrest and charge Plaintiff in relation to the 2016 Incident because witnesses present at the scene identified Plaintiff as a shooter.  Mot. at 29.  Plaintiff argues that the FAC sufficiently pleads that Defendants lacked probable cause, referring to the following conclusory statement: Defendants "lacked probable cause when he/they knowingly, deliberately and with a reckless disregard for the truth obtained and then used [Robles'] forced and coerced identification to obtain an arrest warrant for the plaintiff; and then subsequently arrested him."  FAC ¶ 61.

The FAC does not contain facts sufficient to support the conclusion that Defendants lacked probable cause with respect to the 2016 Incident.  The relevant allegations in the TAC and FAC differ only with respect to the following addition made in the FAC: "after dismissal of the [2014 Incident], but before [Robles'] forced and coerced identification," Defendants "met and/or communicated with each other regarding the dismissal of [the 2014 Incident].  During that meeting and/or communication, [Defendants] expressed their displeasure with the dismissal of [the 2014 Incident] and it was agreed that in order to obtain retribution for the dismissal, [Defendants] would work together to further deprive [P]laintiff of his constitutional rights by arresting him for another crime that he did not commit.  More specifically, [Defendants] agreed to falsely link [P]laintiff to [the 2016 Incident] by obtaining [Robles'] forced and coerced identification.  With that information, they were then able to secure a warrant and arrest plaintiff[;]" and "[w]ith the warrant obtained using knowingly false information, [P]laintiff was arrested on June 24, 2016 and charged[.]".  FAC ¶¶ 41-42. *Cf.* TAC ¶ 37 (alleging that Detective Pisano used Robles' witness statement "to intentionally and wrongfully deprive plaintiff of his constitutional rights as part of an agreement with [Detective Padilla] and [Detective Krusznis] as revenge and retribution for the recent dismissal of the criminal charges against plaintiff stemming from the [2014 Incident]").

Like the allegations made with respect to the 2014 Incident, Plaintiff has failed to allege any facts sufficient to overcome the presumption of probable cause created by the grand jury indictment related to the 2016 Incident.  Plaintiff's allegations point to no specific instances of "fraud, perjury or other corrupt means[]" used to procure the grand jury indictment nor do they demonstrate that there was *not* a fair probability that Plaintiff was the shooter.  Instead, as previously noted by the Court (Vazquez, J.), Plaintiff "has not identified the false statements or omissions contained within the affidavit underlying his arrest warrant, much less shown that the officers who created the affidavit made false statements or omissions with at least a reckless disregard for the truth."  D.E. 39 at 12-13 (Vazquez, J.); FAC ¶ 42;  *see also Waters v. Cheltenham Twp.*, 700 F. App'x 149, 153 (3d Cir. 2017) (an arrest secured with a warrant typically establishes probable cause); *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016) (finding that to determine whether there was probable cause sufficient for an arrest warrant based on an officer's sworn affidavit, a court must first identify the false statements or omissions); *Nabi v. Abrams*, 2019 WL 3423570, at *6 (D.N.J. July 30, 2019) (granting judgment on the pleadings for a malicious prosecution claim and finding that the amended complaint failed to adequately allege that defendants obtained an arrest warrant through false statements or omissions because plaintiff did not specify misrepresentations that defendants made to obtain the warrant); *Garza v. Citigroup Inc.*, 724 F. App'x 95, 98-99 (3d Cir. 2018) ("A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.").Nonetheless, Plaintiff makes "vague and conclusory claims" that lack substantial factual support, and Plaintiff's malicious prosecution claim stemming from the 2016 Incident will be dismissed with prejudice.  *Nieves v. Fahmy*, 2016 WL 6804926, at *4 (E.D.N.Y. Nov. 16, 2016) (dismissing malicious prosecution claim where complaint only made

11

"vague and conclusory claims that 'false information and evidence, including the possession of [marijuana] was used to form the basis of 'false charges [] brought against the plaintiff.'"); *Jones v. Murphy*, 2022 WL 1229515, at *6 (D.N.J. Apr. 26, 2022) (dismissing malicious prosecution claim with prejudice because plaintiff amended the complaint several times).

### B.  Section 1983 Conspiracy Claim

Plaintiff also brings a conspiracy claim pursuant to Section 1983 against the Detective Defendants.  The Detective Defendants argue that Plaintiff's claim fails because: (1) they did not act in concert or agreement, and (2) Plaintiff did not allege particularized allegations against Defendants.  Mot. at 35.  Plaintiff responds that the conspiracy claim does not fail because the FAC alleges the time of the agreement, the parties involved, and the object of the agreement.  Opp. at 26.  The Court agrees with the Detective Defendants.

To state a conspiracy claim pursuant to Section 1983, a plaintiff must: (1) allege "that persons acting under color of state law reached an understanding to deprive him of his constitutional rights[;]" and (2) "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Ross v. Graf*, 2021 WL 4452651, at *3 (D.N.J. Sept. 28, 2021) (dismissing plaintiff's conspiracy claims where plaintiff broadly alleges that defendants "conspired" and "worked together" to violate his constitutional rights, but did not allege an agreement between defendants, nor did he "provide any particularized factual support of an agreement or concerted action").  Additionally, "the plaintiff must plead, with particularity, the circumstances of the alleged conspiracy so that the defendant is put on notice of his or her alleged misconduct."  *Cali v. Borough of Seaside Park*, 2020 WL 6384157, at *6 (D.N.J. Oct. 30, 2020) (quotation omitted).

12

Here, Plaintiff fails to meet his burden.  Plaintiff merely alleges that the Defendant Detectives: "met and/or communicated with each other" and "agreed that in order to obtain retribution for the dismissal [of the 2014 Incident], [the Defendant Detectives] would work together to further deprive [P]laintiff of his constitutional rights by arresting him for another crime that he did not commit[;]" and "agreed to falsely link [P]laintiff to [the 2016 Incident] by obtaining [Robles'] forced and coerced identification."  FAC ¶ 68.  However, like the TAC, SAC, and Initial Complaint, Plaintiff's conclusory allegations are insufficient to support a conspiracy claim.[5] While the FAC alleges a conspiracy with greater specificity than the TAC, Plaintiff's allegations rely on mere suspicion and speculation, lacking any factual support.  *See Estate of Martin v. U.S. Marshalls Serv. Agents*, 649 F. App'x 239, 244 (3d Cir. 2016) (noting that plaintiff must rely on more than his own suspicion and speculation to support a conspiracy claim); *Livingston v. Borough of Edgewood*, 430 App'x 172, 178 (3d Cir. 2011) (affirming dismissal of conspiracy claims because plaintiff failed to proffer evidence to support a reasonable finding of conspiratorial agreement or concerted efforts among defendants).

---

[5] *Compare* TAC ¶ 37 (the Detective Defendants used Robles' allegedly coerced testimony "to intentionally and wrongfully deprive [P]laintiff of his constitutional rights as part of an agreement with [Detective Padilla] and [Detective Krusznis] as revenge and retribution for the recent dismissal [of the 2014 Incident.]") *with* FAC ¶¶ 67-68 (the Detective Defendants "reached an understanding to deprive plaintiff of his constitutional rights[;]" "met and/or communicated with each other regarding the dismissal of [the 2014 Indictment]. During that meeting and/or communication, [the Detective Defendants] expressed their displeasure with the dismissal of [the 2014 Indictment] and it was agreed that in order to obtain retribution for the dismissal, [the Detective Defendants] would work together to further deprive plaintiff of his constitutional rights by arresting him for another crime that he did not commit").

13

The Court has previously been cautioned Plaintiff against deficiently pleading his conspiracy claim again.  *See* D.E. 56 at 11.  Accordingly, as Plaintiff's conspiracy claim continues to be deficient, it will be dismissed with prejudice.[6]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion will be **GRANTED**.  The Court will **DISMISS** *with prejudice* Plaintiff's malicious prosecution and conspiracy claims brought pursuant to Section 1983.  An appropriate Order accompanies this Opinion.

Dated: October 17, 2023

Evelyn Padin, U.S.D.J.

---

[6] Because Plaintiff's claims will be dismissed, the Court need not reach Defendants' qualified immunity argument.